**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

November 12, 2026

**Via ECF**
Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

**Re: *Lee v. Corcoran et al.*, No. 26 Civ. 9896 (JPO)**

Dear Judge Caproni:

This Office ("the Government") represents Defendants Eugene J. Corcoran, in his official capacity as District Executive of the U.S. District Court for the Eastern District of New York; Michael Loguercio, in his official capacity as an employee of the District Executive's office; John Marzulli, in his official capacity as spokesman for the U.S. Attorney's Office for the Eastern District of New York; and Joseph Nocella, Jr., in his official capacity as U.S. Attorney for the Eastern District of New York, in the above-referenced action and application for emergency relief brought by Plaintiff Matthew Russell Lee. The Government submits this letter brief in opposition to Plaintiff's motion. *See* Dkt. Nos. 9-11.[1]

"A preliminary injunction is an extraordinary remedy never awarded as of right," *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), but only "upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. The fundamental purpose of preliminary injunctive relief is "to preserve the relative positions of the parties until a trial on the merits can be had." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *accord Unicon Mgmt. Corp. v. Koppers Co.*, 366 F.2d 199, 204 (2d Cir. 1966) ("It is hornbook law that the general purpose of a preliminary injunction is to preserve the status quo pending final determination of the action." (citation and quotation marks omitted)).

A plaintiff seeking a preliminary injunction must establish that (1) "he is likely to succeed on the merits," (2) "he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in his favor," and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20.

Plaintiff's motion should be denied in full primarily because he has not demonstrated demonstrable and irreparable harm and cannot show a likelihood of success on the merits.

---

[1] The Government also contends that Plaintiff's complaint, *see* Dkt. No. 1 should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

**A. Irreparable Harm**

To satisfy the requirement of irreparable harm, Plaintiff "must demonstrate that absent a preliminary injunction[,] [he] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. Mamlo AM v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (citation and quotation marks omitted).

Plaintiff has not shown irreparable harm. Plaintiff alleges that he has "los[t] the ability to report on [the trials] from inside the courtroom and [will] lose[] coverage that cannot be recovered later." *See* Compl. ¶ 36; *see also* Br. 8. This is simply not the case. Although Plaintiff alleges he lost his press pass, *Plaintiff does not allege that he has been banned from entering either courtroom*. In other words, he does not allege that his access to either trial has been restricted in any way or that his ability to report on the proceedings has been curtailed. He does not allege that, as a result of having his press passes revoked, he is unable to access either trial as a member of the public or that he is unable to report on either trial. Rather, Plaintiff merely contends that he "has not entered the courthouse, in order to avoid facing even further restriction[.]" *See* Compl. ¶ 31. In fact, as the District Executive's declaration states, Plaintiff was told that he was being escorted downstairs, *not out of the courthouse*, so that he could check his electronic devices. *See* Corcoran Declaration ¶ 10. He was told explicitly that he *could* reenter the courtroom after he checked his electronic devices downstairs. *See id.* ¶ 9. Plaintiff stated that he wanted to leave the building of his own volition so that he could finish writing an article and that he would return. *See id.*

At most, Plaintiff's allegations suggest the "mere possibility" of an injury, *Minigan v. Irvin*, No. 95 Civ. 99H, 1996 WL 80176, at *5 (W.D.N.Y. Feb. 15, 1996), and not the "real threat of actual injury," *Garcia v. Arevalo*, 1994 WL 383238, at *2 (S.D.N.Y. 1994) (plaintiff's "bare allegation" of anticipated future beatings by prison guards insufficient to show irreparable harm). Plaintiff therefore fails to show that, without his press pass, any First Amendment freedom has been or will be restricted or that he will suffer imminent harm.

**B. Likelihood of Success on the Merits**

Plaintiff cannot demonstrate a likelihood of success on the merits because he fails to state claim pursuant to Rule 12(b)(6) as to each specific claim. His due process claim is deficient because, even assuming he has a protected interest, he received adequate process in the form of notice and an opportunity to present his case before Defendant Loguercio. His First Amendment Retaliation claim fails because he cannot show any connection between any protected activity and the revocation of his press passes. His selective enforcement claim fails for the same reason. And his claim for declaratory relief fails as duplicative and because it seeks only a retrospective determination.

*1. <u>Due Process</u>*

Assuming that Plaintiff does have a due process interest in his press credentials, Plaintiff's claim nevertheless fails because he received adequate process. A plaintiff is entitled to "notice reasonable calculated, under all the circumstances" and "opportunity to present [his] objections" to the alleged deprivation at issue. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306

(1950). The notice must contain "sufficient information to understand the basis for the action." *Kapps v. Wing*, 404 F.3d 105, 124 (2d Cir. 2005) (cleaned up).

Here, Plaintiff indisputably received adequate notice and an opportunity to be heard. Plaintiff concedes that he was using his phone in the courtroom in violation of Administrative Order 2025-02. *See* Compl. ¶ 14, 22. Plaintiff concedes that he was told the reason that his press pass was being revoked was that he was in violation of that rule. *See id.* ¶ 26 (alleging he "was told that . . . he could not bring a phone or laptop into the courthouse"). Plaintiff concedes that he was able to object to the revocation decision and present his argument that because he is an attorney admitted to the Eastern District he should be allowed to bring his phone into the courtroom. *See id.* ¶ 26; *see also* Corcoran Decl. ¶ 5.

Plaintiff therefore received adequate process. *See, e.g.*, *Spinale v. U.S.*, 277 F. App'x 108, 109 (2d Cir. 2008) (dismissing due process claim where plaintiff had notice of the relevant requirement and an opportunity to be heard "because he presented his argument . . . and the relevant facts"). Nothing more was required. *See, e.g.*, *DeMais v. Benefico*, 567 F. Supp. 2d 449, 456 (S.D.N.Y. 2008) (concluding procedures satisfied due process where plaintiff received notice of deprivation and "opportunity to present evidence to the contrary" and explaining that no other "procedures . . . would further safeguard against the risk of erroneous deprivation . . . while simultaneously giving proper consideration to the administrative burden . . . if it were required to provide a more formal hearing").

2. *First Amendment Retaliation*

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has [exercised] a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

Plaintiff's claim fails for multiple reasons. Plaintiff alleges that the District Executive's office is in charge of press passes. *See* Compl. ¶ 15. Plaintiff further acknowledges that, pursuant to the terms of the press pass, "devices [such as phones] are not permitted in the courtroom" and "violators lose press privileges." *Id.* ¶ 15. Plaintiff concedes that he violated the terms of the press pass by "us[ing] his phone in the courtroom." *Id.* ¶ 22. Plaintiff alleges that an employee of the District Executive, Defendant Loguercio, directed Court Security Officers to confiscate Plaintiff's press pass. *See id.* ¶ 25. Plaintiff does not allege that Defendant Loguercio or Defendant Corcoran were motivated by Plaintiff's exercise of any First Amendment right. Plaintiff does not allege that Defendant Loguercio or Defendant Corcoran were even *aware* of the earlier specific protected activity of Plaintiff that purportedly served as the impetus for the allegedly retaliatory revocation. *See* Compl. ¶¶ 17, 19-20.[2]

---

[2] He alleges only that Defendant Corcoran told him in October 2022 that judges in the Eastern District "do not like live tweeting." *See* Compl. ¶ 18. But Plaintiff draws no connection between this remark and the later decision to revoke his press pass—and, in any event, it appears that "live tweeting" from inside the courtroom would itself be a violation of the Administrative Order.

Rather, Plaintiff blames Defendant Marzulli. Yet Plaintiff does not allege any actual connection between Plaintiff's protected First Amendment activity and Defendant Marzulli's actions, merely that he had a prior encounter with Defendant Marzulli in 2022 regarding his reporting. That sole encounter, four years prior, cannot give rise to an inference that Defendant Mazrulli's actions were motivated by an exercise of any First Amendment right. *See, e.g.*, *Pitton v. New York City Department of Education*, 148 F. Supp. 3d 217, 231 (E.D.N.Y. 2015) ("[P]laintiff cannot meet her burden of showing a nexus between her speech and [the adverse action] by temporal proximity alone, as nearly five months had passed between plaintiff's [protected speech] and when plaintiff [suffered the adverse action]."). Plaintiff alleges no other connection between any of his "reporting," *see* Compl. ¶ 40, and the revocation of his press pass.

In any event, the basis for his argument regarding Defendant Marzulli is that a "government official may not coerce or induce a third party to punish speech on his behalf," Br. 6, citing *National Rifle Association of America v. Vullo*, 602 U.S. 175 (2024) and *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963). These cases are inapposite. In *Vulo*, the Supreme Court explained that *Bantam Books* "stands for the principle that a government official . . . cannot *coerce* a private party to punish or suppress disfavored speech on her behalf." *Vullo*, 602 U.S. at 190 (emphasis added).[3] And it explained the various factors that courts consider relevant to determining what constitutes a "coercive threat," including, e.g., "whether the speech refers to adverse consequences." *Id.* But Plaintiff does not allege that the District Executive's office—the entity in charge of the press passes—coerced or induced anyone to revoke Plaintiff's pass. What is more, Plaintiff does not allege that anyone at all was coerced into doing so. All he alleges is that Defendant Marzulli stated he was contacting the District Executive and that Defendant Loguercio "soon thereafter arrived on the tenth floor" and directed Court Security Officers to "t[ake] Plaintiff's press passes." Compl. ¶ 25. Plaintiff does not allege that Defendant Marzulli, e.g., "use[d] the power of his office to threaten legal sanction against" the District Executive if he did not revoke Plaintiff's press pass. *See Vullo*, 602 U.S. at 190 (further quotation and citation omitted). Plaintiff therefore cannot invoke *Vullo* or *Bantam Books* in support of his argument.

Plaintiff bases his claim in part on the purportedly protected activity of emailing several judges in the Eastern District (not Defendants) on November 3 about access to immigration proceedings and the Clase trial. *See* Compl. ¶¶ 17-20; *see also* Br. 5. But the November 3 requests were sent to *judges*; Plaintiff does not allege *any Defendant* was even aware of these letters, only that the U.S. Attorney's Office "represents the government in those cases." *See* Compl. ¶ 19. Plaintiff thus fails to allege any connection between this allegedly protected activity and the alleged adverse action, further dooming this claim. *See, e.g.*, *McDonald v. Smith*, 2013 WL 7044723, at *8 (W.D.N.Y. Dec. 17, 2013) (dismissing First Amendment retaliation claim where plaintiff failed to make any "connection . . . between [plaintiff's] grievances and the removed postage save plaintiff's conclusory allegation that [defendant] acted in retaliation).

Finally, to the extent that Plaintiff suggests a chilling harm, that argument fails because Plaintiff was explicitly told that he was entirely free to return to the courtroom after checking his electronic devices with security downstairs, *see* Corcoran Decl. ¶ 9. *See Davidson v. Bartholome*,

---

[3] Plaintiff's suggestion of a claim based on mere "induce[ment]," Br. 6, is erroneous and not supported by *Vullo* or *Bantam Books*.

460 F. Supp. 2d 436, 447 (S.D.N.Y. Oct. 12, 2006) (alleged retaliation is actionable "only if [it] is likely to chill a person of ordinary firmness from continuing to engage in constitutionally protected activity").

3. *Selective Enforcement*

Plaintiff alleges that Defendants engaged in selective enforcement of its press pass rules against him, purportedly in violation of the First Amendment. Plaintiff cites no case law in support of such a First Amendment claim. Plaintiff argues that any restrictions on access to the courtroom "must be reasonable in light of [their] purpose and must not suppress speech because of the speaker's views." Br. 7. But Plaintiff does not challenge the press-pass restrictions themselves as unreasonable nor contend that they are not content or viewpoint-neutral. And Plaintiff's complaint is devoid of allegations linking the revocation of his press pass for violation the restriction on phone use to Plaintiff's "viewpoint." *See id.*

To the extent he purports to bring a selective enforcement claim under the Equal Protection Clause, that claim fails for the same reasons as his retaliation claim, namely, that he cannot show that the decision to revoke his press pass was motivated by "impermissible considerations," such as his "exercise of constitutional rights." *Zahra v. Town of Southold*, 48 F.3d 674 (2d Cir. 1995).

4. *Declaratory Judgment*

As an initial matter, "the law does not recognize a declaratory judgment claim for relief," *Skanska USA Bldg. Inc. v. Regeneron Pharm. Inc.*, No. 23 Civ. 8418 (PMH), 2024 WL 3274731, at *3 (S.D.N.Y. July 1, 2024), because "a declaratory judgment is a remedy, not a cause of action." *Linares v. Annucci*, No. 19 Civ. 11120, 2021 WL 2689736, at *7 (S.D.N.Y. June 30, 2021). Where, as here, a plaintiff fails to state an underlying claim for relief, a declaratory judgment is not available. *See In re Joint Eastern and Southern Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) ("[A] court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief").

Even if Plaintiff could state an underlying claim, declaratory relief would still not be appropriate. "A decision whether to award relief under the DJA lies within the discretion of the district court . . . [which] should consider: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *City of Perry, Iowa v. Proctor & Gamble Co.*, 188 F. Supp. 3d 276, 286 (S.D.N.Y. 2016) (quotation omitted).

Here, Plaintiff's request fails for two reasons. First, it is duplicative because it would resolve the same issues raised in his First Amendment and Due Process claims and thus serves "no useful purpose." *See, e.g.*, *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 311-12 (S.D.N.Y. 2010) (claim for declaratory relief serves "no useful purpose" where other claims "will necessarily settle the issues for which the declaratory judgment is sought"). *Second*, Plaintiff seeks a retrospective determination about his dismissal, but "declaratory relief is intended to operate prospectively" and "[t]here is no basis for declaratory relief where only past acts are involved." *See Nat'l Union Fire Ins. Co. of Pitsburgh, PA v. Int'l Wire Grp. Inc.*, No. 02 Civ. 10338 (SAS), 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003).

### C. Balance of the Equities and Public Interest

The final two factors, the balance of equities and the public interest, also weigh in Defendants' favor. *See Nken v. Holder*, 556 U.S. 418, 435–36 (2009) (final two factors merge when the government is the party opposing a motion for preliminary injunctive relief). Because, as explained above, Plaintiff cannot establish the first two factors necessary to obtain a preliminary injunction, "it is clear they cannot make the corresponding strong showings [on the second two factors] required to tip the balance in their favor." *Davis v. Pension Benefit Guarantee Corp.*, 571 F.3d 1288, 1295 (D.C. Cir. 2009). Indeed, these factors tip in Defendants' favor if the Court were to consider them further. As noted above, Plaintiff concededly violated the Administrative Order and Defendants did nothing more than enforce that rule. Further, Plaintiff *remains free to enter the courtroom to observe either trial and continue his reporting.*

* * *

Plaintiff's motion for emergency relief should therefore be denied and his complaint dismissed in full.

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York

*Attorney for Defendants*

*/s/ Gregory Margolis*

BY: GREGORY MARGOLIS
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2677
gregory.margolis@usdoj.gov

cc: All Counsel of Record (via ECF)