UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATTHEW RUSSELL LEE,
Plaintiff,

-v-

EUGENE J. CORCORAN, *et al.*,
Defendants.

26-CV-9896 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Matthew Russell Lee, a professional reporter, brings this *pro se* action against Defendants Eugene J. Corcoran, Michael Loguercio (together, the "District Defendants"), John Marzulli, and Joseph Nocella Jr. (collectively, "Defendants"). In it, Lee alleges that the Defendants violated his First and Fifth Amendment rights when they revoked his Eastern District of New York press credentials. Lee moves for a temporary restraining order compelling the District Defendants to return his press credentials. For the reasons that follow, the motion is denied.

## I. Background

### A. Factual Background

Lee is a reporter for Inner City Press, a media organization that covers the federal courts. (ECF No. 1 ("Compl.") ¶¶ 1, 6, 11.) He is also a licensed attorney admitted to practice in the Eastern District of New York. (*Id.* ¶¶ 1, 12.)

Sometime before November 4, 2026, Lee applied for press credentials (also known as press passes) to cover two ongoing criminal trials in the Eastern District's Brooklyn courthouse: *United States v. Clase de la Cruz* and *United States v. Huawei*. (*See id.* ¶¶ 1, 13.) (Because Lee does not hold in-house press status for the Eastern District, he must apply for his press passes on a case-by-case basis. (*See id.* ¶ 16; ECF No. 20 ("Corcoran Decl.") ¶ 8.) After those

applications were granted by the Eastern District's Office of the District Executive, Lee began reporting on the two trials. (Compl. ¶¶ 1, 13.)

On November 4, 2026, while covering the *Clase* trial, Lee "briefly used his [cell] phone in the courtroom." (*Id.* ¶ 22.) Lee believed he was allowed to do so, he alleges, because an Eastern District administrative order allows admitted attorneys like Lee to bring their electronic devices into the courthouse (*see* ECF No. 23-1 ("Admin. Ord. No. 2025-02") at 2), and various journalists and attorneys seated near him were using their phones in the courtroom as well (Compl. ¶ 22).

The courtroom used for the *Clase* trial, however, has signage posted outside that reads: "The use of phones and electronics is prohibited in the courtroom." (Corcoran Decl. ¶ 2.) As a result, upon seeing Lee using his phone in the courtroom, Marzulli, the spokesman for the United States Attorney's Office for the Eastern District of New York, called Lee into the hallway and told him that he planned to contact Corcoran (the District Executive) about Lee's phone usage. (Compl. ¶¶ 7, 24.)

Shortly thereafter, Loguercio (a staff member in the District Executive's office) and three court security officers found Lee using a laptop in a hallway outside of the trial's overflow room. (*Id.* ¶ 25; ECF No. 11 ("Lee Decl.") at 2; Corcoran Decl. ¶ 4.) Loguercio told Lee that he had violated the rules regarding electronic device usage in the courthouse, and that his press credentials for the *Clase* and *Huawei* trials would be revoked accordingly. (Corcoran Decl. ¶ 5; *see also* Compl. ¶ 26.) Lee responded that, while he had been using his phone in the courtroom, he was allowed to do so as an attorney admitted to practice in the Eastern District. (Compl. ¶ 26.) He also showed Loguercio his certificate of admission as proof of his admitted attorney status. (*Id.*)

Lee and Corcoran disagree about what happened next. According to Lee, Loguercio then confiscated Lee's press passes and "escorted him out of the courthouse." (Compl. ¶ 25; Lee Decl. at 2.) According to Corcoran, Loguercio took Lee's press passes but told him that he could return to the courtroom so long as he left his electronic devices at the courthouse security booth. (Corcoran Decl. ¶¶ 9-10.) Lee declined to do so and left the courthouse voluntarily, claiming that he had "a story to finish writing." (*Id.*)

Lee's press passes have not been returned to him, and Lee has not tried to reenter the Eastern District courthouse. (Compl. ¶ 30; Lee Decl. at 2-3.)

**B. Procedural History**

Lee filed this lawsuit on November 11, 2026, and filed an emergency motion for a temporary restraining order the same day. (Compl.; ECF No. 9.) In his complaint, Lee alleges that the revocation of his press passes violated the First Amendment and the Due Process Clause of the Fifth Amendment to the United States Constitution. (*See generally* Compl.) Specifically, Lee contends that the passes were selectively confiscated in retaliation for (1) a 2022 conversation he had with Loguercio regarding his lack of in-house press status and (2) Lee's emails to seven Eastern District judges the day before the revocation asking that immigration habeas proceedings be made public. (*Id.* ¶¶ 18-19, 43.) He also contends that his press credentials were revoked without notice or an opportunity to be heard. (*Id.* ¶ 51.) Lee asserts the same claims in his motion for a temporary restraining order. (*See generally* ECF No. 10 ("Mem.").) In that motion, Lee seeks an order compelling the District Defendants to return his press credentials before the *Clase* and *Huawei* trials end. (*Id.* at 9.)

On November 12, 2026, the Government submitted an opposition to Lee's motion (ECF No. 19 ("Opp.")), and Lee filed a brief reply (ECF No. 23). The Court held oral argument that afternoon.

## II. Legal Standard

The standards for a temporary restraining order and a preliminary injunction are the same in the Second Circuit. *Jackson v. Johnson*, 962 F. Supp. 391, 392 (S.D.N.Y. 1997). To be entitled to one, a plaintiff must establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm if the injunction is not granted, (3) that the balance of the equities tips in his favor, and (4) that the injunction serves the public interest." *Wimberly v. Atl. Dialysis Mgmt. Servs., LLC*, No. 24-CV-9269, 2025 WL 1677757, at *2 (S.D.N.Y. June 13, 2025) (cleaned up).

Where a plaintiff seeks a mandatory preliminary injunction requiring the Government to undertake some positive act, the injunction is warranted only if the plaintiff demonstrates both irreparable harm and "a *clear* or *substantial* likelihood of success on the merits." *Libertarian Party of Conn. v. Lamont*, 977 F.3d 173, 176 (2d Cir. 2020) (emphasis added). And because a temporary restraining order is "an extraordinary remedy that should not be granted as a routine matter," the decision whether to grant one "rests in the district court's sound discretion." *Nicholas v. Bratton*, No. 15-CV-9592, 2016 WL 3093997, at *2 (S.D.N.Y. June 1, 2016) (quotation marks omitted).

## III. Discussion

### A. Likelihood of Success

Lee asserts that Defendants violated his First and Fifth Amendment rights when they summarily revoked his press passes and and forbade him from using his electronic devices inside the courthouse. (Mem. at 5-7.) Defendants argue that the revocation was motivated by Lee's

rule breaking—not any protected speech or activity—and that the hallway conversation where Lee admitted to his phone usage was all the process he was due. (Opp. at 3-5.)

As to Lee's First Amendment retaliation claim, Defendants' arguments prevail at this stage in the litigation. To state a First Amendment retaliation claim, a plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quotation marks omitted). But the only speech for which Lee claims he was retaliated against is a 2022 conversation with Marzulli about his lack of in-house press status, and an email he sent to various Eastern District judges the day before the revocation asking them to make immigration habeas proceedings public. (Compl. ¶¶ 17-19.) And Lee's complaint draws no real causal connection between that speech and the revocation of his press passes. For example, Lee does not allege that Marzulli or the District Defendants were aware of his November 3 emails, and Lee himself admits that no "judge[s]" were involved in the decision to revoke his press credentials. (Compl. ¶ 1; Mem. at 1-2.) Lee therefore has not shown a likelihood of success (let alone a clear or substantial likelihood of success) on the merits of his retaliation claim.

Lee's First Amendment viewpoint discrimination claim fares no better.[1] Principally, Lee contends that he, unlike other journalists, has been denied access to his electronic devices in the courtroom. (Compl. ¶¶ 47-48.) But Lee has not alleged that any of the Defendants were even aware of *what* he was reporting when he was barred from using his phone in the courtroom in violation of court rules. Nor has he alleged that he typically adopts a particular viewpoint that is

[1] In his complaint, Lee frames this First Amendment claim as a "selective enforcement" one, but the Court is not aware of any such claim arising under the First Amendment. (*See* Opp. at 5.) The Court construes this claim as a viewpoint discrimination claim accordingly.

for some reason unpalatable to those Defendants. And regardless, if reporters have no First Amendment right to use electronic devices in the courtroom, *see United States v. Yonkers Bd. of Educ.*, 587 F. Supp. 51, 53 (S.D.N.Y. 1984), it seems unlikely that they have a First Amendment right to *possess* electronic devices in the courtroom. His viewpoint discrimination claim is therefore unlikely to succeed.

Finally, as to Lee's due process claims, to establish that his press credentials were revoked in violation of the Fifth Amendment, Lee must show that he has a liberty or property interest in those credentials, and that he was deprived of them without due process of law. *Bryant v. N.Y. St. Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012); accord *Bratton*, 2016 WL 3093997, at *3. But even assuming that Lee possesses a liberty interest in his temporary press passes, Lee has not established, at this early stage in the litigation, that he received something less than the process he was due. After all, Lee was put on notice when he filled out his press pass application that his credentials may be revoked if he violated the rules surrounding electronic device usage.[2] (*See* Mem. at 3.) He was given an opportunity to contest that revocation during an extended back-and-forth with Loguercio in the hallway—during which Lee admitted to having used his phone in the courtroom, argued that he should have been allowed to use it given his status as an admitted attorney, and showed Loguercio documentary proof of that status. (Compl. ¶ 26; *see* Corcoran Decl. ¶ 5.) Because the point of a pre-deprivation hearing is "to serve as an initial check against mistaken decisions," and Lee admitted to the conduct that he knew could result in the revocation of his press credentials, it is not evident what more pre-

[2] To the extent Lee suggests that this notice was unclear as applied to him because he was not only a reporter but also an admitted attorney (*see* Mem. at 3, 7), the Court notes that the Eastern District's rules regarding electronic device usage allow admitted attorneys to "*bring* electronic devices into the *courthouse*"; they do not state that attorneys may *use* electronic devices in the *courtroom*. (Admin. Ord. No. 2025-02 at 2 (emphasis added).)

deprivation process was required under the circumstances. *O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir. 2005) (quotation marks omitted). Lee thus has not demonstrated a clear or substantial likelihood of success on the merits of any of his constitutional claims.

**B. Irreparable Harm**

Lee also argues that he will suffer irreparable harm until his press passes are returned because he has not able to cover either the *Clase* or the *Huawei* trials without them, and "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." (Mem. at 8 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)); *see also* Lee Decl. at 3.) But when those press credentials were revoked, Lee was explicitly told that he could return to the *Clase* courtroom and continue his reporting—so long as he did so without bringing his electronic devices inside with him. (Corcoran Decl. ¶ 9.) (Lee was told the same in Defendants' briefing on the present motion. (*See* Mem. at 6.)) Lee is therefore free to observe the *Clase* and *Huawei* trials, to "take notes [by hand] and [to] report on the proceedings to the public." *Yonkers Bd. of Educ.*, 587 F. Supp. at 53. And because reporters—like other individuals—do not possess a First Amendment right to "record, photograph or broadcast judicial proceedings" in the manner of their choosing, Lee is not likely to suffer a cognizable First Amendment harm in the absence of his press passes. *Id.*; *see also* *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 609 (1978). The Court thus declines to grant Lee the "extraordinary remedy" of a temporary restraining order. *Bratton*, 2016 WL 3093997, at *2.[3]

---

[3] Because a showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction," the Court does not reach Lee's arguments with respect to the balance of the equities or the public interest. *Valenzuela Arias v. Decker*, 612 F. Supp. 3d 307, 312 (S.D.N.Y. 2020) (quotation marks omitted).

## IV. Conclusion

For the foregoing reasons, Lee's motion for a temporary restraining order is denied.

The Clerk of Court is directed to close the motion at Docket Number 9.

SO ORDERED.

Dated: November 15, 2026
New York, New York

J. PAUL OETKEN
United States District Judge