**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTHEW RUSSELL LEE,<br>Plaintiff,<br>v.<br>EUGENE J. CORCORAN, in his official capacity as District Executive of the United States District Court for the Eastern District of New York; MICHAEL LOGUERCIO, in his official capacity as an employee of the District Executive's office; JOHN MARZULLI, in his official capacity as spokesman for the United States Attorney's Office for the Eastern District of New York; and JOSEPH NOCELLA JR., in his official capacity as United States Attorney for the Eastern District of New York,<br>Defendants. | 26-CV-9896 (JPO)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION** |

Plaintiff Matthew Russell Lee respectfully submits this memorandum under Local Civil Rule 6.3 in support of his motion for reconsideration or clarification of the Court's Memorandum and Order of November 15, 2026 (ECF 24, the "Order"), which denied his motion for a temporary restraining order. The motion is made within fourteen days of the Order.

**STANDARD**

Reconsideration is warranted where the movant identifies "controlling decisions or data that the court overlooked" that "might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 104 (2d Cir. 2013). Plaintiff does not reargue. He identifies points that were before the Court and that the Order does not address.

**1. The Order does not address Karem and Sherrill, which define the process due.**

Plaintiff's memorandum cited Karem v. Trump, 960 F.3d 656, 660, 665 (D.C. Cir. 2020), and Sherrill v. Knight, 569 F.2d 124, 130-31 (D.C. Cir. 1977). They hold that a journalist's interest in a press credential is a liberty interest and that, before it is taken, due process requires at a minimum notice of the factual basis for the action and an opportunity to respond before an impartial decisionmaker. ECF 10. The Order cites neither case. It concludes that the hallway exchange was sufficient because Plaintiff "admitted" the conduct. Order at 6-7. But Plaintiff's position then and now is that, as an attorney admitted to this District, he was authorized to use his device. Compl. ¶ 26; ECF 11. Whether the conduct violated any applicable rule was therefore the disputed question, not an admission. The decision was made by staff after the United States Attorney's Office spokesman said he would contact the District Executive. Compl. ¶¶ 24-25, 42. No criteria governing credentials have been published. Compl. ¶ 16. Under Karem, these facts show a likelihood of success on the due process claim.

**2. The District of Columbia federal court's recent press-credential rulings reinforce each of these points.**

In *Cable News Network, Inc. v. Trump*, No. 1:26-cv-03287 (TJK) (D.D.C.), the White House revoked the "hard pass" credentials of reporters for CNN, MS NOW and POLITICO on September 18, 2026. Judge Kelly issued a temporary restraining order restoring them on September 24 (ECF 24), extended it, and on October 13 granted a preliminary injunction (ECF 49, 50). Four holdings bear on this motion. *First*, applying *Sherrill* and *Karem*, the court held that a journalist's interest in a press credential is a liberty interest that "may not be denied without due process of law." Mem. Op. at 9 (quoting *Karem*, 960 F.3d at 665). *Second*, the court

held that the process due includes fair notice, before the conduct occurs, of "explicit and meaningful standard[s]" that are "formally articulated or published," and that a notice sent after the conduct is inadequate. *Id.* at 10 (quoting *Karem*, 960 F.3d at 665-66). Here, no criteria for press credentials have been published (Compl. ¶ 16), and the passes were taken on the spot. *Third*, the court held that where the harm is constitutional, "the likelihood of success on the merits overlaps heavily with the irreparable harm inquiry," and that a due process violation is itself irreparable harm. *Id.* at 21-22 (citing *Karem*, 960 F.3d at 667-68, and *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). *Fourth*, the court treated restoring credentials revoked days earlier as an injunction that "preserve[s] the status quo," not a mandatory one. *Id.* at 8. Although decisions of the D.C. Circuit and the district court there do not bind this Court, they apply the principles that Plaintiff's motion invoked (ECF 10), and the government's appeal is pending, No. 26-5356 (D.C. Cir.).

**3. The Order applied a heightened standard without addressing the status-quo rule.**

The Order applies the mandatory-injunction standard and requires a "clear or substantial likelihood of success." Order at 4. Plaintiff's memorandum argued that an injunction restoring "the last actual, peaceable, uncontested status between the parties" is not a mandatory injunction. N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc., 883 F.3d 32, 37 (2d Cir. 2018); ECF 10. Plaintiff held both press passes, without objection, until November 4. Compl. ¶ 13. The relief he seeks is their return. The Order does not mention North American Soccer League or explain why restoring the pre-November 4 status is a mandatory injunction. Under the ordinary standard, Plaintiff's showing on likelihood of success and harm should be reassessed.

**4. The Order does not address the revocation of the Huawei pass.**

The Order's finding of no irreparable harm rests on Plaintiff's having been told that he could return to the Clase courtroom if he left his devices at the security booth. Order at 7. (Logercio in fact told the three Court Security Officers to escort Plaintiff out of the courthouse). The only conduct at issue occurred in the Clase courtroom, and the only posted prohibition the Order identifies is the sign outside that courtroom. Order at 2. Yet Defendants also revoked Plaintiff's pass for United States v. Huawei. Compl. ¶ 25. That trial is before a different judge in a different courtroom. Nothing in the record shows a device violation at the Huawei trial, a posted prohibition there, or an offer to restore that pass. In fact, in the Clase courtroom, there have been numerous people in the Huawei courtroom gallery, many of them not associated with the US Attorney's Office or defense, using electronics. Closing arguments in Huawei are scheduled for tomorrow, November 16.

Whatever the Court concludes about Clase, the revocation of the Huawei pass was a deprivation of a credential without process and without any stated basis. It is continuing now, as closing arguments take place.

**5. The Order misattributes the 2022 facts and does not address several pleaded allegations bearing on causation.**

The Order describes the 2022 conversation as one with Loguercio (Order at 3) and as one with Marzulli (Order at 5), and it finds no allegation that "the District Defendants" knew of Plaintiff's protected activity. The complaint alleges an August 2022 call with Marzulli after Plaintiff's coverage of a remand (¶ 17) and an October 4, 2022 meeting with Defendant Corcoran, the District Executive, about Plaintiff's press access (¶ 18). Corcoran therefore knew of Plaintiff's activity concerning press access. The Order also does not address ¶ 20, which alleges that Plaintiff asked in writing that the Clase overflow room be repaired and told Judge

Matsumoto on November 3 that it was not working, or the allegation in ¶ 43 that no one else who used a phone was removed. Considered together with the timing, one day after the November 3 letters, these allegations support an inference of retaliatory motive that the Order does not weigh.

**6. The harm analysis should account for the condition attached to the offer.**

The Order treats the invitation to return as eliminating the harm. Defendants' condition was that Plaintiff surrender electronic devices that Administrative Order 2025-02 permits him, as an admitted attorney, to bring into the courthouse. Plaintiff does not claim a right to use devices in a courtroom whose presiding judge prohibits them, and the relief he seeks is expressly "subject to the order of any presiding judge." Compl., Prayer (b). The harm is the revocation of the credentials themselves, and the exclusion that followed, without process. Compl. ¶¶ 30, 32, 35; Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion). The harm is also one of time. Plaintiff reports the news. If he must leave his devices at the security booth or at home, he cannot prepare or file any report from inside the building during recesses, and he must wait until he has left the courthouse and reached a device, which is hours later than reporters and attorneys who keep theirs. Compl. ¶ 22. On November 4, another reporter was live-tweeting the Clase trial from the courtroom. Reporters with in-house status can also type and file their reports in the courthouse press room during the day. Plaintiff, who has no in-house status and must rely on trial-by-trial passes (Compl. ¶¶ 16, 35), would have to leave the building and go across the street to find a place to work. He will so declare in support of the preliminary injunction motion. The Order does not consider that Plaintiff is the one reporter in these trials who is excluded from real-time reporting, by a condition imposed without notice or a hearing. For a news reporter, timeliness is the substance of the work, and a delay in reporting is itself a First Amendment injury that no later relief can undo. See Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 560-61 (1976) (noting that "the element of time is not unimportant if the press is to fulfill its traditional

function of bringing news to the public promptly"). The Order's observation that Plaintiff may take handwritten notes and report afterward (Order at 7) does not address this injury.

**7. The Court is respectfully asked to clarify the Order as to devices stowed in courtrooms and used elsewhere.**

Footnote 2 states that Administrative Order 2025-02 allows admitted attorneys to "bring electronic devices into the courthouse" but does not state that they may use them in the courtroom. Order at 6 n.2. The Order also states that it seems unlikely that reporters have a First Amendment right to "possess" electronic devices in the courtroom. Order at 6. Plaintiff does not dispute that a presiding judge may prohibit the use of devices in her courtroom, and he will comply with any such prohibition. The sign the Order quotes prohibits "use" of phones and electronics. Order at 2. The Order does not decide whether an admitted attorney may keep a device stowed in a bag, and not in use, in such a courtroom, and then use it elsewhere in the building, such as the cafeteria or other public areas, to prepare notes and reports. It also relies on Defendants' condition that Plaintiff leave his devices at the security booth (Order at 7), under which an admitted attorney could not keep a device with him anywhere in the courthouse. That is difficult to square with the permission to bring one in. Plaintiff therefore asks the Court to clarify that the Order does not hold or imply (a) that an attorney admitted to this District who brings a device into the courthouse under the Administrative Order may not keep it stowed, and not in use, in a courtroom where use is prohibited, (b) that he may not use it outside courtrooms, including in the cafeteria and other public areas, or (c) that Defendants may condition the issuance or retention of a press pass on his surrendering the device. A clarification would let Plaintiff and the District Executive's office comply with the Court's understanding while the case proceeds, and would narrow the issues for any preliminary injunction hearing.

**8. Further information bearing on motive.**

Plaintiff recognizes that Local Civil Rule 6.3 is directed to matters already before the Court. He offers the following so that the Court is aware of it, and he will plead it in an amended complaint and support it by declaration. Reporters have told Plaintiff that Defendant Marzulli said he believed Plaintiff must be audio recording court proceedings because Plaintiff's reporting was so detailed. Counsel for Defendants on November 13, the day after oral argument, told Plaintiff that Defendant Corcoran said the same exactly thing. If accurate, these statements show that both Marzulli and Corcoran were aware of the content and detail of Plaintiff's reporting, and that their attention to Plaintiff was prompted by that reporting. In fact, they acted specifically on the content of Plaintiff's reporting - a very definition of First Amendment violation(s). They bear on the knowledge and causation gaps identified at Order at 5-6, and they are consistent with the allegation that Plaintiff was removed because of his newsgathering rather than because of a rule about phones.

**CONCLUSION**

Plaintiff respectfully asks the Court to reconsider or clarify the Order. At a minimum, he asks that the Huawei pass be restored pending a hearing and that the Court set a schedule for a preliminary injunction hearing.

Dated: New York, New York
November 15, 2026

Respectfully submitted,

____________/s/ Matthew Russsell Lee__________________

Matthew Russell Lee
Inner City Press
PO Box 130222, Chinatown Station, NYC, NY 10013
matthew.lee@innercitypress.com
718-716-3540
Plaintiff, pro se